IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00822-LTB-MJW

BIRDIE, LLC, a limited liability company,

    Plaintiff,

v.

MON PETIT OISEAU, LLC, a limited liability company, and COLOR IMAGE APPAREL, INC., a California corporation,

    Defendants.

---

**REPLY TO OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT OR ALTERNATIVELY TO TRANSFER FOR CONVENIENCE**

## I. INTRODUCTION

In its Opposition, Plaintiff Birdie, LLC ("Birdie") seeks to provide a distraction from the essential issue currently before this Court – that Birdie brought this action as an improper, anticipatory filing, and that, as such, the exception to the first-to-file rule should be invoked and this matter should be dismissed.

Birdie disregards the essential underlying facts: (1) Defendants Mon Petit Oiseau, LLC ("MPO") and Color Image Apparel, Inc. (collectively "MPO" or "Defendants") placed Birdie on notice of their intent to file their trademark infringement action in the Central District of California if the parties were unable enter into a commercial settlement of the matter; (2) Defendants provided Birdie with a draft of their intended complaint; (3) MPO abstained from filing the California complaint *solely* because the parties were in good faith negotiations and because MPO was waiting for a response to its initial settlement offer; (4) the parties were actively engaging in a commercial resolution; (5) Birdie chose to file the Colorado complaint in lieu of replying to MPO's initial settlement offer; and (6) Birdie solicited a settlement offer *from* MPO. The combination of these facts makes for compelling circumstances to support abrogation of the first-to-file rule.

## II. ARGUMENT

### A. The Complaints Are Mirror Images Of Each Other.

The fact that the draft California complaint listed as plaintiff, Color Image Apparel, Inc. ("CLRI") instead of MPO, is a distinction without a difference. CLRI is the parent of MPO, and Birdie knows the relationship between these two entities. (*See* Declaration of Richard P. Sybert in Support of Defendants' Reply to Opposition to Motion to Dismiss Complaint or Alternative to Transfer for Convenience ("Sybert Reply Decl."), ¶ 2.) Moreover, parties and claims need not be identical in order for one action to be dismissed. *Caspian Investments, Ltd. v. Vicom Holdings, Ltd, et al.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The *Caspian* court held that a stay or dismissal in deference to a

foreign action was warranted because the two actions were virtually identical in that they both involved interpretation of the same loan agreements, alleged the same violations of identical contractual obligations, sought the same relief, and the two defendants were closely linked in that one defendant was a "wholly-owned" subsidiary of the other and the two were jointly liable under the terms of the agreement at issue. 770 F. Supp. at 884.

Here, the substance of the Colorado complaint, the draft California complaint, and the filed California complaint are virtually identical. The only recognizable difference is that the draft complaint names CLRI as sole plaintiff, whereas the filed California complaint names MPO as sole plaintiff. Because the two pleadings are virtually identical, mirror-images of one another, because CLRI is the parent of MPO, and because Birdie *knows* of this relationship, the Court should disregard Birdie's contention that the Colorado complaint does not involve the same issues/same parties, and find that MPO has satisfied this element of the anticipatory exception to the first-to-file rule.

### B.   Compelling Circumstances Exist to Disregard The First-To-File Rule.

As Birdie concedes, compelling circumstances warrant a disregard for the first-to-file rule. (Opposition, pp. 2-3; *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, 2002 U.S. Dist LEXIS 24915, at *4-5 (D. Kan. 2002). Compelling circumstances include improper anticipatory filings for declaratory judgments made under threats of a presumed adversary filing a suit. *Id.* at *5 (citing *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488-89 (8th Cir. 1990) ("red flags" suggesting compelling circumstances to disregard first-filed rule include notice that other side was considering filing lawsuit, and that first-filed suit was declaratory judgment action)).

#### 1.   MPO Is The True Plaintiff.

Where the second-filed suit seeks damages, the defendant in the first-filed declaratory relief action "could be considered [the] 'true' plaintiff." *Universal Premium Acceptance Corp., supra*, 2002 U.S. Dist LEXIS at 6 (citing *Goodyear, supra*, 920 F.2d at 489). Here, the

California Complaint seeks monetary relief and damages (*See* Declaration of Richard P. Sybert in Support of Defendants' Motion to Dismiss Complaint or Alternatively to Transfer for Convenience ["Sybert Decl."], Exhibit I), whereas the complaint before this Court seeks only declaratory relief, making MPO the "true" plaintiff in this matter.

Here, because counsel for Defendants previously provided Birdie with a draft trademark infringement complaint and they informed Birdie they would file the suit in the Central District of California if the parties did not settle, Birdie was undeniably on notice of MPO's intent to bring suit. Moreover, despite Birdie's assertion, MPO did not withhold filing suit, nor did it engage in an extended or unending uncertainty sufficient to warrant a judicial determination of its rights. Instead, the parties entered into negotiation discussions just one month before Birdie brought this declaratory judgment suit, and MPO withheld filing suit *only* so that the parties could attempt to resolve the matter. Thus, because Birdie's declaratory judgment action unfairly deprives MPO, the natural plaintiff, of its choice of forum, the Court should find that compelling circumstances exist to warrant disregard for the first-to-file rule.

## 2. After Soliciting A Settlement Offer From MPO, Birdie Improperly Filed Suit In Lieu Of A Responsive Counter-Offer.

Here, despite Birdie's protestations, the parties were clearly engaged in good faith settlement talks. Indeed, as late as March 31, 2006, less than one month before Birdie filed suit, counsel for Birdie solicited a settlement offer from MPO. The letter stated that Birdie was "willing to entertain a commercial resolution as an alternative to litigation. If you would provide us with some parameters as to the type of resolution that might be acceptable to your client, we will forward them to our client for consideration. We look forward to your response." (*See* Sybert Decl., Exhibit G, p. 1.) Accordingly, on April 6, counsel for Defendants provided Birdie with a proposal for a commercial resolution. (*See id.*, p. 2.)

While Defendants were awaiting Birdie's response to its commercial resolution offer, Birdie instead brought this suit. If Birdie considered the initial commercial resolution offer to be "futile", then it had ample opportunity to communicate this response in lieu of filing the

Colorado complaint. Instead, Birdie opted for "radio silence" and chose to respond to the initial settlement offer with a declaratory relief action. Birdie's anticipatory filing was indeed, improper.

### 3.   MPO Should Not Be Condoned For Engaging In Procedural Fencing To Secure Its Forum.

Courts are influenced by well-founded procedural fencing accusations that may "tip the balance against an otherwise proper declaratory judgment action." *Obsolete Fort Parts, supra,* 306 F. Supp.2d at 1157; *see also, Tempco Electric Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746, 749 (7th Cir. 1987) ("The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum.").

In *Wilson Sporting Goods Co., v. Nicklaus Golf Equipment Co., LLC, et al.,* 2004 U.S. Dist. LEXIS 171, at *12 (N.D. Ill. 2004), the parties were engaged in a trademark dispute of the use of the term "Jack" in association with a new golf ball marketed by plaintiff Wilson Sporting Goods Company. The *Wilson* court quoted the language of the settlement negotiation letters written back and forth between counsel. After receiving defendants' cease and desist letter, plaintiff's counsel reiterated plaintiff's interest in settling the matter by writing:

> As an initial matter, I would like to reiterate that Wilson would like to resolve this matter without resort to litigation. To that end, perhaps we can discuss a means for mediating or arbitrating the trademark issues you have raises.
>
> It would be helpful . . . if you could supply us with documentation [of trademark registrations and uses] . . . Accordingly, please contact the undersigned to discuss a means for resolving this dispute that would be expeditious and save our clients the great expense of protracted litigation.

*Id.* at *3-6. However, instead of waiting for defendants' responsive letter, two days later, plaintiff filed its declaratory relief action. *Id.* at *6. Defendants responded by filing their trademark infringement suit. *Id.* The *Wilson* court, in citing to *Tempco,* found that defendants' prompt but subsequent trademark infringement action obviated the need for plaintiff's declaratory relief action. *Id.* at *11-12 (following *Tempco* to dismiss declaratory judgment

actions where trademark suit filed promptly thereafter).

The facts of *Wilson* are analogous to those before this Court. In its opposition papers, Birdie asserts that it "believed at the time this action was filed that further negotiations appeared futile" because the initial offer was "unreasonable." (Opposition, p. 9.) However, it was Birdie who introduced the offer to explore a possible business resolution by its March 31, 2006 letter. Further, Birdie knew that MPO was postponing the filing its trademark action so that the parties could engage in fruitful settlement discussions. Birdie never provided MPO with a counter offer to MPO's initial settlement offer, nor did it communicate to MPO that the offer was unreasonable. Instead, and while MPO was waiting for Birdie's response, Birdie chose to bring this declaratory relief action. It was Birdie's action that was "unreasonable" and unwarranted.

Birdie's assertion that it was justified in bringing suit because MPO's April 10, 2006 deadline had passed is disingenuous. First, MPO did not state that its deadline for filing the California Complaint was April 10, 2006. In fact, on March 26, 2006 MPO's counsel wrote that MPO would entertain a commercial resolution to the dispute and that, "[a]bsent a satisfactory response, we will file the attached complaint for trademark infringement in the U.S. District Court, Central District of California. Please advise us no later than April 10, 2006, of your position." (Sybert Decl., Exhibit F, p. 4.) Rather than stating a deadline for filing the California Complaint, the letter actually states that it seeks a deadline for a response to its request for Birdie's position. That April 10th had passed merely meant that filing the California Complaint was becoming more imminent with each passing day. Moreover, because *Birdie* stated its willingness on March 31, 2006 to entertain a commercial resolution to the matter, it is disingenuous for Birdie to claim that it was forced to file this complaint on April 28th, less than one month later, because MPO withheld filing suit.

Further evidence of Birdie's procedural fencing exists. The initial correspondence to Birdie from Defendants' counsel indicated that "We represent Mon Petit Oiseau ("MPO") and its principal Tracy Wilkinson, owner of all right, title and interest to the following registered

trademarks: ..." (Sybert Decl., Exhibit D, p. 1.) In addition, the letter to which the draft California Complaint was attached referred to MPO as the client. (Sybert Decl., Exhibit F, p. 104.) Clearly, Birdie was on notice that MPO was the main claimant to the underlying infringement issues. If Birdie required any clarification as to CLRI's role, it could have made such a request from MPO's counsel as to the proper owner of the trademarks at issue prior to filing the Colorado Complaint.

In addition, as further evidence that the Colorado action is an anticipatory filing, it was Birdie's counsel in San Francisco who was negotiating a possible business resolution to the matter with Defendants' counsel. However, Birdie's San Francisco counsel utilized its Colorado office to file the complaint in Colorado.

Finally, Birdie, itself, admits in its opposing papers that "MPO's California suit raises the same issues and involves the same parties as this action." (Opposition, p. 3.) Thus, Birdie's contentions that the Colorado Complaint is not an anticipatory filing is disingenuous – its procedural fencing should not be condoned.

### 4. Birdie's Claim That It Was Forced To Bring Suit To Protect Its Interests Is Unavailing.

Birdie's contention that it was forced to bring the Colorado action out of a concern for its interests is unevidenced. When Birdie noticed that one of the trademark registrations at issue was approaching the five-year registration anniversary, the parties were in communication concerning settlement negotiations. Birdie's counsel could have easily raised this issue with Defendants' counsel and ascertained whether the California complaint would be filed prior to the expiration of the five-year mark, rather than have to file this action to protect its interests.

### C. The Parties Previously Conferred Concerning MPO's Intent To Request A Transfer For Convenience In Conjunction With And As An Alternative To, The Motion To Dismiss.

The parties had undeniably conferred concerning the motion to transfer for convenience. From the moment Defendants were served with the Colorado complaint, counsel for both parties conferred over whether Defendants would seek to have the Colorado action dismissed *or*

transferred as an improper anticipatory filing. First, after Defendants' counsel informed Birdie that its Colorado complaint was an improper anticipatory suit, counsel for Birdie initiated the possibility of a stipulation to a transfer of venue. Indeed, in a letter dated May 10, 2006, Birdie's counsel wrote, "... if you can provide us with valid reasons why the Central District of California is overall a more convenient forum for this dispute, we would be willing to consider stipulating to a transfer of venue pursuant to 28 U.S.C. § 1404(a)." (Sybert Decl., Exhibit J [May 10, 2006 letter from Birdie's counsel]; Declaration of Douglas L. Hendricks in Support of Plaintiff's Opposition, ¶ 13.) Second, in correspondence dated May 21, 2006, Defendants' counsel informed Birdie's counsel that "we do, in fact, intend to file a motion to dismiss or in the alternative to transfer the Colorado action should we not resolve this matter otherwise." (Sybert Reply Decl., ¶ 3, Exhibit A [May 21, 2006 correspondence to counsel for Birdie].) Because the parties were not able to resolve the matter, Defendants brought this motion.

The purpose of Local Rule 7.1 is to "require the parties to confer and to attempt to resolve a dispute before incurring the expense of filing a motion and before requiring the court to address a disputed issue." *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003). Thus, although Defendants concede that their moving papers did not completely comply with Local Rule 7.1 by not stating the specific efforts made to confer, the parties had previously conferred *and* made good faith efforts to confer to resolve the venue issue.

Further, because the underlying facts are analogous, Defendants respectfully request that the Court follow the decision in *Qwest Corp. v. New Access Communications, LLC*, 2004 U.S. Dist. LEXIS 28523 (D. Colo. 2004). In *Qwest Corp.*, defendants moved to stay the action, to compel arbitration, to dismiss, and sought attorneys' fees and costs. *Id.* at *15-16. Defendants did not comply with Local Rule 7.1 in that they did not certify the parties complied with the rule *nor* did they apparently confer with counsel prior to filing the motion. *Id.* at *15. Because the "primary thrust" of defendants' motion was a motion to dismiss pursuant to Fed. R. Civ. P. 12, and because such motions are specifically exempt from the duty to confer language of Rule 7.1,

the Colorado District court agreed to hear defendants' motion, with the admonishment that in situations where it is unclear whether Local Rule 7.1 was applicable, it was better to err on the side of conferring with counsel than to assume the local rule was not applicable. *Id.* at *15-16.

Here, although Defendants did not certify their compliance with Local Rule 7.1, they did, in fact confer with Birdie's counsel concerning the possibility of bringing a transfer for convenience. Further, the main focus of the motion currently before this court is, in fact, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The motion to transfer for convenience is presented as an alternative remedy. Arguably, because the motion to transfer is combined with a motion to dismiss, it is not clear whether Local Rule 7.1 even applies.

Defendants respectfully request the Court entertain its motion to transfer and further state their intent to comply with Local Rule 7.1 for future motions before this Court.

**D.    Birdie Has Not Claimed Any Impediment Exists To MPO Maintaining Its Trademark Infringement Claims In The California Complaint; And California Is The Most Convenient Venue.**

Because Birdie's declaratory relief action is an anticipatory action, its choice of forum should not be given weight. "A court is not bound by a party's forum choice, particularly when the party filed a declaratory judgment action to attempt to get the 'paramount right to choose the forum for trying out questions of infringement and validity.'" *Owens-Illinois Glass Container Inc. v. B & H Mfg. Inc.*, 1989 U.S. Dist. LEXIS 16927, at *8 (E.D. Cal. 1989) (quoting *Kerotest Manufacturing Co. v. C-O Two Fire Equipment Co.*, 342 U.S. 180, 185 (1952)).

Further, despite its assertions that Colorado is the proper venue in which to hear the parties' issues, Birdie makes no claim that the Central District provides any *impediment* to it maintaining its declaratory relief claims in the California Complaint. *See Obsolete Ford Parts, supra*, 306 F. Supp.2d at 1158 (declaratory relief action plaintiff provided no impediment to raising its claims in the later-filed action). Moreover, because it sells products in at least two retail stores in the Central District (Opposition, p.15), Birdie could reasonably be expected to be hailed in to court in that district.

The declarations submitted in support of the Opposition are from Birdie's upper management employees. The Declaration of Michael Connolly states that Mr. Connolly provides legal counsel for Birdie on its legal matters including the intellectual property issues at issue in this matter. This witness does not appear to have knowledge concerning percipient facts concerning the design of Birdie's marks which would relate to the underlying allegations of infringement.

The Declaration of Kate Sutton states that Ms. Sutton who is the founder and president of Birdie, resides in San Francisco, not Colorado. Ms. Sutton's declaration states that Birdie has an office in San Francisco that employs five people. Further, it appears that Ms. Sutton is Birdie's primary percipient witness because she was involved in the selection and development of the Birdie mark and logo. Additionally, Ms. Sutton states that she was and continues to be involved in making business decisions for Birdie, which include the manufacturing and marketing of Birdie goods. Further, Ms. Sutton states that the San Francisco office possesses relevant documents. Moreover, during a recent Fashion & Design Trade Event in Los Angeles, Birdie was listed in the directory with a San Francisco address. (Declaration of Marco DeGeorge [DeGeorge Decl."], ¶ 2.) Finally, the Association of Golf Merchandisers also lists a San Francisco address for Birdie, as does Birdie's business card. (DeGeorge Decl., ¶ 3.)

On the other hand, all MPO percipient witnesses reside in the Central District, where the California trademark infringement action is venued. Tracy Wilkinson, the founder and principal of MPO who designed the MPO marks and is MPO's primary witness, resides in the Central District and all of MPO's relevant documents can be found there. (Declaration of Tracy Wilkinson ["Wilkerson Decl."], ¶¶ 1-3.) Ms. Wilkinson will testify as to being contacted by Birdie to design the Birdie line of clothing. (Wilkerson Decl., ¶ 4.) Huy Dang, a sales representative for MPO was contacted by Birdie to represent the Birdie line of clothing. (Wilkerson Decl., ¶ 5.) Huy Dang lives in Los Angeles, California. (Wilkerson Decl., ¶ 5.) This testimony will provide further evidence that Birdie's infringements, which are the underlying

claims in the California complaint, are knowing, intentional, and willful.

Marco DeGeorge, the managing partner of MPO also resides in the Central District and is knowledgeable concerning the underlying allegations of trademark infringement in this litigation. (DeGeorge Decl., ¶ 4.) Because MPO primarily markets its goods to California, and more particularly, the Central District, the majority of its customers who may have knowledge concerning customer confusion will reside in the Central District. (Wilkinson Decl., ¶ 6; *See also* Hendricks Decl., Exhibit A [printout of MPO's store list].) Finally, none of MPO's employees or anticipated percipient witnesses resides in Colorado. (Wilkinson Decl., ¶ 7.)

Thus, Colorado is an inconvenient forum for MPO to litigate these issues. Thus, both parties have significant and substantial ties to California, whereas only Birdie arguably has any presence in Colorado. Indeed, because Birdie's declaratory relief action is an anticipatory action, its choice of forum should not be given any weight, and because Birdie has made no claim that the Central District provides any *impediment* to it maintaining its declaratory relief claims in the California Complaint, the Court should find that the Central District is the most convenient forum to hear the issues in this matter.

## III. <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request the Court dismiss the Colorado Complaint. Alternatively, Defendants request the Court transfer the Colorado action to the Central District of California, the most convenient forum in which to try the underlying issues, and where the parallel trademark infringement matter is venued.

Dated: this 22nd day of August, 2006.

Respectfully submitted,

/s/ Richard P. Sybert
Richard P. Sybert
GORDON & REES LLP
101 West Broadway, Suite 1600
San Diego, California 92101
tel (619) 696-6700/fax (619) 696-7124
email rsybert@gordonrees.com
Attorneys for Defendants
